# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

TERRY L. ELAM,                          :

     Plaintiff,                     :
                                       Case No. 3:11cv00234

 vs.                                   :

                                     District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,                      :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                :

     Defendant.                     :

# REPORT AND RECOMMENDATIONS[1]

## I.    <u>Introduction</u>

Plaintiff Terry L. Elam brings this case challenging the Social Security Administration's denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The denial was warranted, according to Administrative Law Judge Thaddeus J. Armstead Sr, because Plaintiff was not under a "disability" within the meaning of the Social Security Act. This Court has jurisdiction to review the administrative denial of his SSI and DIB applications. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Commissioner's Memorandum in Opposition (Doc. #10), the administrative record (Doc. #7), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and remanding this case to the Social Security Administration to correct certain errors. Plaintiff alternatively seeks a remand for administrative consideration of certain new and material evidence.

The Commissioner opposes each type of remand and contends that an Order affirming the ALJ's decision is warranted.

## II. __Background__

### A. __Plaintiff__

Plaintiff filed his SSI and DIB applications in September 2006, asserting that he has been under a "disability" since March 15, 2003 due to "seizures – brain function" and left hip pain. *Id*. at 227.[2] During a hearing held by the Administrative Law Judge (ALJ), Plaintiff's counsel requested that Plaintiff's alleged onset date be amended to the date he turned age 50 in February 2008. (Doc. #7, PageID at 92). On the date of the ALJ's decision, Plaintiff was age 51. He was therefore considered to be "closely approaching advanced age" for Social Security purposes. *See* 20 C.F.R. §§404.1563(d); 416.963(d).[3]

Plaintiff has a high school education. His past relevant work included jobs as a

---

[2] Plaintiff initially filed an application for DIB on June 26, 2003 due to seizures. (Doc. #7, PageID at 163-65, 198). That claim was denied and Plaintiff did not appeal the denial. *Id*. at 116-24.

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

construction worker, laborer, factory worker, and rope maker.

The ALJ held a hearing concerning Plaintiff's DIB/SSI applications on July 16, 2009. At the hearing, attorney Michael Rake represented Plaintiff. (Doc. #7, PageID at 85). Also at that time, Plaintiff was represented by attorney David A. Orlins, who later (in September 2009) withdrew from representing Plaintiff. *Id.*, PageID at 85, 156-57. Plaintiff explains in the present case, "Mr. Elam obtained new counsel to help him with his case due to illness of his prior counsel" – presumably David A. Orlins. (Doc. #8, PageID at 415).

During the ALJ's hearing, the ALJ asked attorney Rake, "did you get a chance to review the file?" (Doc. #7, PageID at 86). Attorney Rake answered, "Yes, your honor." *Id.* Attorney Rake declined to object to the admission of the exhibits in evidence. The ALJ then asked attorney Rake if he brought "anything else," other than the appointment of representative form. Attorney Rake said no, and the ALJ admitted all the exhibits into evidence. *Id.*

Attorney Rake did not ask the ALJ to hold the record open for additional evidence and he did not inform the ALJ that the record did not contain any treatment records from Dr. Patel. Plaintiff explains in the present case, "New counsel was not aware that the treating physician records from Dr. Patel were missing until the administrative law judge spelled this out in his decision." (Doc. #8, PageID at 415).

Plaintiff testified during the ALJ's hearing that his most recent job had been as a rope maker in 2006 or 2007. He worked as a rope maker for about nine months, putting

3

rope "on big spools so it could be shipped out to the military."  (Doc. #7, PageID at 93).

When the ALJ asked Plaintiff to explain what medical problem prevented him from working, Plaintiff answered, "my hip, I can only, I can only stand on my feet for like maybe 15, 20 minutes at a time . . . until the pain just gets so bad."  *Id.*, PageID at 93-94. Plaintiff's counsel explained to the ALJ that Plaintiff also had a history of seizures, back pain, and knee pain.  *Id.*, PageID at 94.  Plaintiff estimated that his hip pain and knee pain can get up to an "eight" on a scale of one to ten (one being very little pain; ten being the most pain he had ever experienced).  *Id.*, PageID at 99.  With medication, Plaintiff's pain eased to a six, but it never went away.  He also testified he had been using a cane for about three years, though he did so on his own rather than through a physician's prescription.  He had not been able to get extensive medical treatment for his hip and knee because he had "no way to pay for anything."  *Id.*, PageID at 96.

When asked about seizures, Plaintiff testified, "That's pretty much under control, just when I get in a hurry and do work, then I would get lightheaded and have a seizure." (Doc. #7, PageID at 98).  His last seizure had occurred about four years before the ALJ's hearing.  *Id.*

As to his household chores, Plaintiff can wash his dishes, let his dog outside, and cook.  *Id.*, PageID at 100.  He used an electric scooter in the grocery store, and had used the electric scooter for about four years.  He explained, "I can't walk very far."  *Id.*  He estimated that he could walk a block before his hip starts hurting and he would have to sit down and rest.  *Id.*, PageID at 100.

4

Plaintiff estimated that he could can only stand for 15-20 minutes because the pain "just gets so bad." *Id.*, PageID at 93-94.  He could sit 1½ hours.  And he could lift no more than 20 pounds. *Id.*, PageID at 100-01.

### B.    Medical Records and Opinions

### 1.
### Rajendra Patel, M.D.

The administrative record contains a return to work note from Rajendra Patel, M.D. dated September 14, 2006, which indicated that Plaintiff could return to work on October 7, 2006 with the limitation that he lift no more than 10 pounds due to his left hip and backache.  (Doc. #7, PageID at 389).

In December 2007, Dr. Patel completed a Verification of Disability form for the Greene County Metropolitan Housing Authority.  On this form, Dr. Patel checked a box indicating that Plaintiff is a "disabled person."  (Doc. #7, PageID at 387-88).

The ALJ pointed out in his decision that the administrative record did not contain treatment records from Dr. Patel. *Id.*, PageID at 75.

During the ALJ's hearing in July 2009, attorney Rake asked Plaintiff, "Does Dr. Patel want to do any kind of testing for you?  X-rays, MRIs, anything like that?" *Id.*, PageID at 96.  Plaintiff answered, "Yeah, he wants me to come back and see him but I can't, I can't afford to pay him . . . ." *Id.*

**2.**
**Diagnostic Testing**

An x-ray of Plaintiff's left hip in September 2006 showed osteoarthritic changes. There was a moderate decrease in joint space, sclerosis of the articular surface, and osteophyte formation. There was also a rounded osteochondroma along the lateral aspect of the joint space, suspicious of loose body. And there were cystic changes noted within the left femoral head. (Doc. #7, PageID at 335).

A CT scan of Plaintiff's lumbar spine in September 2006 showed mild spondylotic changes with some broad based disc bulges and mild spinal stenosis at L4-5. *Id*., PageID at 333-34.

**3.**
**William D. Padamadan, M.D.**

In December 2006, William D. Padamadan, M.D. examined Plaintiff at the request of the Ohio Bureau of Disability Determination (the Ohio BDD). (Doc. #7, PageID at 366-59). Plaintiff reported left hip and knee pain of eight-months duration. Dr. Padamandan noted that Plaintiff walked with a limp and used a cane. *Id*., PageID at 366. Plaintiff's x-ray "was disproportionately normal, except for mild sclerosis of the pelvic rim. Joint space was normal in the left hip." *Id*.

Upon examination of Plaintiff's lower extremities, Dr. Padamadan observed the following:

His affected left hip showed decrease slowness of motion of the hip,

6

claiming to be due to pain, but the Patrick test was negative.[4]  There was
some decrease in ROM [Range of Motion], which is not reliable.  No edema
of the legs.  Pedal pulses were intact.  He was not able to walk on heels and
toes, claiming to be due to his left hip pain.

(Doc. #7, PageID at 368)(footnote added).  Dr. Padamadan diagnosed obesity, left hip and

knee pain – both "without objective findings."  (*PageID* 368).  Dr. Padamadan opined,

"Based upon this clinical evaluation, only restriction he needs will be to stop drinking

alcohol. . . ." (Doc. #7, PageID at 368-69).

### 4.
### Gerald Klyop, M.D./Gary Demuth, M.D.

In December 2006, Gerald Klyop, M.D. reviewed the record at the Ohio BDD's

request and completed a "Physical Residual Functional Capacity Assessment."  (Doc. #7,

PageID at 376-83).  According to Dr. Klyop, Plaintiff could lift 50 pounds occasionally

and 25 pounds frequently.  *Id*., PageID at 377.  Dr. Klyop concluded that Plaintiff  could

stand and/or walk for 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour

workday; climb ramps and stairs frequently; never climb ladders, ropes or scaffolds; and

should avoid all exposure to hazards.  *Id*., PageID at 377-80.  Dr. Klyop noted, in part:

Claimant had a x-ray of his hip on 9/18/06, due to clinical history of
lumbar radiculopathy, and the study found osteoarthritic changes within the
left hip.  A CT of the L spine was also done which demonstrated mild
spondylotic changes with no evidence of nerve root compression, vertebral
bodies were grossly normal in height and alignment, no evidence of acute
fracture or subluxation, large osteophytes were present at L3-L4 and L5,
mild decrease in disc space was noted at L3-L4.  Claimant attended CE

---

[4]  The Patrick test is a "test for arthritis of the hip."  Taber's Cyclopedic Medical Dictionary at p.
1528 (19th Ed. 2001).

[Consultative Examination] on 12/13/06 and left hip x-ray was normal.  CE Dr. noted claimant used cane which is not obligatory and walked with a limp.  He had excellent ROM of shoulders, elbows, and fingers.  Flexion of fingers was normal as was grip strength.  His affected left hip showed decreased slowness of motion, claiming to be due to pain, but Patrick test was negative.  There was some decrease in ROM, which is not reliable.  He was not able to walk on heels and toes, claiming to be due to left hip pain.  Final diagnosis was obesity, left hip pain without any objective findings, and left knee pain without any objective findings.  The only restriction given w[a]s that he needs to stop drinking alcohol.  Liver labs are somewhat elevated, not at listings level.

(Doc. #7, PageID at 378).  Addressing Plaintiff's symptoms, Dr. Klyop wrote:

The symptoms is [sic] not attributable, in my judgment, to a medically determinable impairment.  He has no history of injury and no objective findings.  The severity or during of the symptoms, in my judgment, is disproportionate to the expected severity/duration.  The severity of the symptoms and its alleged effect on function is not consistent, in my judgment, with the total medical and nonmedical evidence.

*Id.*, PageID at 381.

In May 2007, Gary Demuth, M.D., reviewed the record and affirmed Dr. Klyop's assessment without providing any explanation or specific reference to Plaintiff's medical records.  *Id.*, PageID at 386.

**5.**
**Evidence Attached to Plaintiff's Statement of Errors**

Plaintiff, through counsel, submitted additional medical evidence to the Appeals Council and has attached the additional evidence to his Statement of Errors.

The additional evidence consisted of (1) records from Dr. Patel from 9/16/06–11/11/10; (2) a left hip x-ray reported dated 9/18/06; (3) a lumbar CT scan report dated 9/18/06; and a left hip x-ray report dated 11/28/07.  (Doc. #8, PageID at 420-33).  In

8

his brief before the Appeals Council – and in this case – Plaintiff contended that the evidence was both new and material.

Dr. Patel's records show that in September 2006 and December 2006, Plaintiff complained of left hip and back pain.  Dr. Patel noted that there was no injury and that his left leg was numb.  (Doc. #8, PageID at 427, 428).  In November and December 2007, Plaintiff continued to report pain in his left hip, and he stated that it hurt to walk.  The x-ray report of Plaintiff's left hip dated November 28, 2007 indicated, "The pelvis appears to be intact.  Advanced deformity of the femoral head on the left is noted with mixed sclerosis and lytic change consistent with aseptic necrosis of the femoral head.  The acetabular side of the joint is normal." *Id*., PageID at 432.  The reviewing physician identified two impressions: "(1) Aseptic necrosis of the left hip strongly questioned. . . . (2) negative pelvis."  *Id.*

Dr. Patel's progress notes in December 2008 indicated that he discussed a hip replacement with Plaintiff (without further details of the discussion).  (Doc. #8, PageID at 425).  In January 2009, Plaintiff continued to report left-hip pain, and Dr. Patel further noted, "hurts to walk[,] use cane."  *Id*.

Dr. Patel's notes show that Plaintiff continued to complain of hip pain in September 2009, in November 2009, and in November 2010.  (Doc. #8, PageID at 422-25).  The additional medical evidence also contains a July 2009 report titled, "Acute Abdominal Series."  (Doc. #8, PageID at 433).  The report states:

> . . . . Degenerative spurring is noted through the spine.  One or two

small air-fluid levels are present in the cecum.  Patient has advanced deformity of the left femoral head with cystic and sclerotic changes.  This would be consistent with aseptic necrosis.

**IMPRESSION**

1.    Advanced degenerative left hip changes and deformity.

2.    Very minor air-fluid levels in the cecum which could be mild ileus. Otherwise, negative abdomen series.

(Doc. #8, PageID 433).


III.    **ADMINISTRATIVE REVIEW**

A.    **"Disability" Defined**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

**B.     Social Security Regulations**

Social Security Regulations require ALJs to resolve a disability claim through a

five-Step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).

Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review

considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

3.     Do the claimant's severe impairments, alone or in combination, meet or
equal the criteria of an impairment set forth in the Commissioner's Listing
of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the claimant
perform his or her past relevant work?

5.     Considering the claimant's age, education, past work experience, and
residual functional capacity, can the claimant perform other work available
in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

**C.     ALJ Armstead's Decision on July 29, 2009**

At Step 1 of the sequential evaluation, ALJ Armstead found that Plaintiff had not

engaged in substantial gainful activity since his amended disability onset date.  (Doc. #7,

PageID at 70).

11

The ALJ found at Step 2 that Plaintiff has the severe impairments of mild lumbar degenerative disc disease, hip degenerative changes, depressive disorder, and borderline intellectual functioning. *Id.* The ALJ concluded that Plaintiff's obesity, knee pain and seizure disorder are not considered severe impairments. *Id.*, PageID at 71-72.

At Step 3 the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner Listing of Impairments. *Id.*, PageID at 73.

At Step 4 the ALJ concluded, in part:

> [T]he claimant has the residual functional capacity[5] to perform medium work . . . with the following limitations: simple to moderately complex tasks with regular expectations; frequent climbing ramps or stairs; no climbing ladders, ropes or scaffolds; occasional work setting and routine changes and lower pressure for production and pace (for example, using a ten point scale to measure pressure for production and pace with "one" representing the lest pressure for production and pace and "ten" representing the greatest pressure for production and pace, claimant would be limited to performing duties at a level of 5).

(Doc. #7, PageID at 74)(footnote added).

The ALJ further concluded at Step 4 that Plaintiff was unable to perform his past relevant work as a rope maker or as a construction worker. And, at Step 5 the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff could perform. *Id.*, PageID at 79-80.

The ALJ's sequential evaluation led him to ultimately conclude that Plaintiff had

---

[5] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *see Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

not been under a disability from the date of his alleged disability onset and, as a result, Plaintiff was not eligible to receive DIB or SSI.

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc Sec*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc Sec*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc Sec*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc Sec*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc Sec*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting, in part,

*Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Soc Sec*, 378 F.3d 541,

546-47 (6th Cir. 2004)).


V.    **DISCUSSION**

   A.    **The ALJ Fully and Fairly Developed the Administrative Record**

   Plaintiff contends that the ALJ failed to fully and fairly develop the record by not

recontacting his treating physician Dr. Patel.  Plaintiff stresses that the ALJ acknowledged

in his decision that he lacked the information he needed to determine if Dr. Patel was an

examining medical source or was Plaintiff's treating physician, yet he still failed to

recontact Dr. Patel.

   "Well-settled precedent confirms that the ALJ bears a responsibility to develop the

record fairly and fully, independent of the claimant's burden to press his case.  The ALJ's

duty to develop the record extends even to cases . . . where an attorney represented the

claimant at the administrative hearing."  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir.

2004); *see Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) ("the

ALJ has an inquisitorial duty to seek clarification on material facts."); *see also Lashley v.

Sec'y of Health & Human Services*, 708 F.2d 1048, 1051 (6th Cir. 1983) ("Subsequent

appellate court development of the *Perales* doctrine [*Richardson v. Perales*, 402 U.S. 389

14

(1971)] has emphasized the remedial purpose of the authorizing legislation and the duty of the administrative law judge to fully develop the record."); *Vaca v. Comm'r of Soc. Sec.*, 2010 WL 821656 *5 (W.D. Mich., Mar. 4, 2010) ("the ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless of whether or not the claimant is represented."). In the present case, Plaintiff was represented by counsel during the ALJ's hearing. Consequently, the ALJ's basic duty to fully and fairly develop the record – although it remained in place, *e.g.,Wright-Hines*, 597 F.3d at 396 – did not rise to the heightened duty to develop the record applicable when a claimant appears during social security proceedings without an attorney or representative. *See Lashley*, 708 F.2d at 1051-52. In both circumstances, "[t]here is no bright line test for determining when the administrative law judge has . . . failed to fully develop the record. The determination in each case must be made on a case by case basis." *Lashley*, 708 F.2d at 1052.

Social Security Ruling 96–5p provides in pertinent part:

> [A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

1996 WL 374183 at *2 (July 2, 1996).

Plaintiff overlooks that the ALJ evaluated Dr. Patel's opinion under the standards applicable to evaluating the opinions of treating physicians. The ALJ did so by first

reviewing in detail the standards applicable to treating physicians, *see* Doc. #7, PageID at

75, then applied those standards to Dr. Patel's opinions, *see id*., PageID at 71, 75.  The

ALJ wrote:

> When evaluated under these guidelines, the conclusions of Dr. Patel cannot be given controlling weight, or even deferential weight.  His conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence in the case record.  The only plausible explanation for his pessimistic assessment of claimant's functional capabilities is that such assessments were based on an unquestioning acceptance of claimant's subjective complaints.  For Social Security purposes, an impairment must be established, not only by a claimant's statement of symptoms, but by medical evidence consisting of signs, symptoms, and laboratory findings . . . . Claimant has some functional limitations associated with his physical impairments, but the weight of record does not establish claimant is unable to work, or [is] even limited to light or sedentary exertion.  There are no treatment records from Dr. Patel in the record . . . .  Further, Dr. Patel does not give an adequate explanation for his opinion that claimant is disabled or incapable of lifting more than 10 pounds.  Due to a lack of records, it is not possible to determine the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, or specialization.  Thus, the opinion of Dr. Patel is given little weight. . . .

(Doc. #7, PageID at 75).  Although the ALJ also indicated that the lack of records

prevented him from determining whether Dr. Patel held a treating or examining

relationship, the ALJ's decision sufficiently discussed the factors applicable to evaluating

Dr. Patel's opinion as Plaintiff's treating physician.  Because that evaluation applied

standards potentially more favorable to Plaintiff, the ALJ did not err in not recontacting

Dr. Patel.

In addition, Plaintiff's counsel during the ALJ's hearing did not inform the ALJ

that the administrative record lacked medical records kept by Dr. Patel.  Plaintiff's

16

counsel acknowledges as much in the present case, explaining that Plaintiff obtained new counsel due to prior counsel's illness and his new counsel, who represented Plaintiff at the ALJ's hearing, "was not aware that the treating physician records from Dr. Patel were missing until the administrative law judge spelled this out in his decision."  (Doc. #8, PageID at 415).  Despite this, the ALJ did not err by relying on counsel's indication during the hearing that he had reviewed the administrative record and had no objections to the exhibits.  Plaintiff's counsel, moreover, did not ask the ALJ to hold the administrative record open for even a brief period of time, which would have allowed recently-appointed counsel time to double-check the completeness of the administrative record.  Under these circumstances, the ALJ did not have a reason to think that any records from Dr. Patel were missing or that the administrative record was incomplete.  The ALJ, therefore, was entitled to proceed with his sequential evaluation of the record without recontacting Dr. Patel.  *Cf. Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)("the ALJ was entitled to rely on counsel's representation of the claims and records that might be involved, and here it is clear to us that counsel made no effort to point out the existence or relevance of Dr. Kimball to the ALJ. . . ."); *cf. also Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 157 n.3 (6th Cir. 2009)("Poe's assertion that the ALJ was required to 're-contact' Dr. Boyd for clarification is also unsupported, as an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician."); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) ("a claimant

17

represented by counsel is presumed to have made his best case before the ALJ . . . .");

*Carroll v. Astrue*, 2010 WL 2643420 at *4 (N.D. Ohio July 1, 2010) (McHargh,

M.J.)("when a claimant is represented by an attorney, the ALJ may assume that the

claimant has presented his strongest case for benefits.").  And, although Social Security

Ruling 96-5p provided the ALJ with the legal authority to recontact Dr. Patel, Ruling 96-

5p did not required the ALJ to recontact Dr. Patel where the absence of additional medical

records from Dr. Patel was not brought to the ALJ's attention.

### B.    Additional Evidence

Plaintiff contends that at a minimum, a remand is warranted under sentence six of

42 U.S.C. § 405(g) based on the new and material evidence he originally submitted to the

Appeals Council and has attached to his Statement of Errors.  Plaintiff argues that good

cause exists for not including that evidence in the record before the ALJ because Plaintiff

had obtained new counsel "due to illness of his prior counsel," and because his new

counsel did not know the treating-physician records from Dr. Patel were missing until the

ALJ spelled it out his decision.  Plaintiff further contends that a sentence six remand is

warranted due to the ALJ's mistaken view that Dr. Patel was not clearly a treating

physician and that the ALJ felt there was a lack of objective evidence documenting

Plaintiff's physical problems.

Under sentence six of 42 U.S.C. § 405(g), this Court may remand a case to the

Social Security Administration "because new evidence has come to light that was not

available to the claimant at the time of the administrative proceeding and that evidence

might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  A sentence six remand is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material.  42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 89; *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Hollon ex rel. Hollon v. Comm'r of Soc Sec*, 447 F.3d 477, 483-84 (6th Cir. 2006).

For purposes of a sentence six remand, "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting in part *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  Remand based on materiality is appropriate only if there is a reasonable possibility that the new evidence offered would have produced a different administrative result.  *Foster*, 279 F.3d at 357.

The party seeking remand bears the burden of establishing that remand is warranted under sentence six of 42 U.S.C. 405(g).  *Foster*, 279 F.3d at 357.

Much of the additional evidence Plaintiff relies on comes from Dr. Patel.  Yet, much of the evidence cannot be considered "new" under sentence six because it existed and was available at the time of the ALJ's decision on July 29, 2009.  This includes three pages of progress notes concerning office visits from December 2006 to January 2009 (Doc. #8, PageID at 425-27); a one-page form dated September 14, 2006, *id*., PageID at 428); a September 18, 2006 x-ray report of Plaintiff's hip, *id*., PageID at 429; a September 18, 2006 CT-scan report concerning Plaintiff's lumbar spine, *id*., PageID at 430-31; and a

19

November 28, 2007 x-ray report of Plaintiff's left hip and pelvis, *id*., PageID at 432; and a July 23, 2009 report concerning "acute abdomimal series," *id*., PageID at 433.  Because this evidence pre-dates the ALJ's decision, it is not new and does not support Plaintiff's request for a remand under sentence six of 42 U.S.C. 405(g).  *See Foster*, 279 F.3d at 357.

Plaintiff has also submitted new evidence – evidence that post-dates the ALJ's July 29, 2009 decision.  Plaintiff's new evidence includes three pages of progress notes from Dr. Patel, concerning office visits on September 1, 2009, November 18, 2009, and November 11, 2010.  (Doc. #8, PageID at 422-24).  Yet this evidence provides only minimal insight into Plaintiff's condition and work abilities.  At best for Plaintiff these notes confirm that he was experiencing pain, but the notes provide no specific information about what was causing the pain or what level of pain Plaintiff was experiencing.  *See id*.  Consequently, these progress notes do not constitute material evidence under sentence six because there is no reasonable probability that this evidence would have changed the ALJ's non-disability determination. *See Hollon*, 447 F.3d at 484; *see also Foster*, 279 F.3d 348, 358 (6th Cir. 2001) ("Foster has not established that there was 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with [this] evidence.'" (citation omitted)).

Accordingly, for all the above reasons, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability determination be affirmed; and

2.      The case be terminated on the docket of this Court.


June 26, 2012                                    s/ Sharon L. Ovington
                                                Sharon L. Ovington
                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).